May it please the Court. My name is Kelly Henry and together with my co-counsel Denise Young, it is my privilege to represent Samuel Lopez in this hearing today. I would like to reserve five minutes of my time for rebuttal. With the Court's permission, although we have raised many substantial issues of constitutional error in this matter and I am prepared to answer questions on any one of those claims, I would like to focus my comments this morning first on the Brady claim and second on the behaved exhaustion of the ineffective assistance of counsel claim in the District Court and that the District Court erred in allowing them to resurrect that waiver, reverse that waiver many years later and without giving petitioner notice and opportunity to respond with his own procedural defenses. Turning first to the Brady claim, Your Honor, and I should say that my remarks regarding the Brady claim are related both to our recently filed motion for the Court to reconsider the denial of the Certificate of Appealability on our Brady claim as well as the merits of the Brady claim as well, acknowledging, of course, that the burden on the Certificate of Appealability is much lower than it is to proceed on it. Why don't you frame this report factually, when you got it, and explain to me exactly how it would have made a difference. Yes, Your Honor. And although it's not in the record because we were not permitted a hearing, I can tell you that the report came once counsel was appointed in Federal District Court and it came through disclosure from the police department. It was in the police department's files. The report purports to be, and I submit that at this stage, since there's been a summary dismissal, all inferences must be drawn in the light most favorable to Mr. Lopez because he hasn't had an opportunity for a hearing. And I believe the fair inference from looking at this document is that it is a memo to the file as to why prosecution was turned down by the State Attorney General's office and why they did not pursue charges against Mr. Lopez. All right. You knew, so you're still applying it to the sentencing hearing, correct? Yes, ma'am. All right. Because this particular, the allegations of rape that were made, what, is it four days after the crime that he's convicted of, right? Yes, ma'am. And that this was someone that he, I'm stating this loosely, but supposedly it had consensual sex with previously and then claimed that he raped her, right? Yes, ma'am. And so that didn't come up in the guilt phase. So we're not talking about the guilt phase. We're talking about the sentencing. The only way it came up, Your Honor, where it would be in the judge's knowledge  later was the sentencer did hear about it at that point. But yes, ma'am, I am. But we're talking relative to the judge, not to the jury. Yes, ma'am. And was it the first sentencing, the second sentencing, or both? It was in the first sentencing, only in the pre-sentence report investigation, where it was discussed under the heading present offense. And then at the second sentencing hearing, it was in. But the first sentencing hearing that the judge, my understanding, found an aggravating factor of a resisting arrest, which was later reversed, but didn't find it. There isn't any mention in the first hearing of relying on that rape, right, as an aggravating factor? There is mention of the judge relying on the pre-sentence report, but given the fact that the sentence was reversed, that's really not an issue before the court. So we're dealing with the second one. We are dealing only with the second sentencing, Your Honor. Right. And so is there any question that in the second hearing, the judge did not, no one thought that he had been charged and convicted of that crime, right? He had not been charged and convicted, although I would submit that it was a reasonable conclusion that he had not been charged and convicted because the State had obtained a death sentence, and so they didn't want to waste judicial resources by charging him with another case when they were going to execute him anyway. Okay. Could you, would you, we have the police report, and then we have what you've characterized probably as charging or non-charging notes, as the case may be. Would you jump to the issue of prejudice, please? I will, Your Honor. And if we, I think the prejudice is patent if we look at the prosecutor's argument to, in several different ways, but first, if we look at the prosecutor's argument to the judge, which is at ER 236, and this puts our case squarely in line with Cone versus Bell, where the prosecutor argued, you look at these facts, you look at this man's history, you look at the fact that four days after he murdered this woman, he's out there raping another woman, he's threatening to kill her. Where is there any mitigation in this man's life? Either past, present, or future. That is in any way socially redeeming. There is none. There is no mitigation here. There is extreme aggravation. You couple that with the fact that the State's expert, Robert Dean, at page 99 of the excerpt of record, explains that the basis for his reasoning to oppose Dr. Bentheim's diagnosis of pathological intoxication, that he relied on the now discredited allegations and unreliable allegations of Cecilia Rodriguez. Judge? But there's also the State Supreme Court decision, which, I mean, repeats that independently by relying on the four days after the murder, the sexual assault, as supporting Dr. Dean and undermining your expert. Yes, ma'am. Which prejudiced Mr. Lopez in multiple ways. This allegation infected the entire record. It is mentioned multiple times, all of which are in our briefs, over and over and over again. But what about the police report, which, I mean, what, they didn't charge, so they knew that. And two, whether something, something took place or not, went to the hospital and it was available to you and others, which basically talked about the medical condition, saying there wasn't really a medical condition. And then there was this odd thing of the tissue or the stuff, I don't know how they described it. And that is what's also repeated later in the charging notes. But it also was in the police report, which was available before. So what, what really is new, other than to say they didn't go ahead with the prosecution, which, of course, isn't really new? What's new, Your Honor, is that the prosecution, the prosecutor who argued the truth and reliability of this allegation of rape to the judge and who gave it to his expert and who gave it to Dr. Bentheim, knowing that they had drawn a conclusion that this witness was not credible, what's also new, I believe, and again, I think we have to have a hearing on this, is the evidence that Ms. Rodriguez's statement that she had been choked, that there was no evidence to support that, that she had drank eight beers that night. I don't remember there being eight beers. I read that in a police report that there's no physical evidence. No physical evidence is one thing, because if you're saying, I mean, as someone who used to defend rape cases, just because there's no vaginal trauma doesn't mean there's not a rape. But if the woman is saying that she was choked and there's no evidence of choking, that's significant information that undermines her credibility. And it's not just that there was an allegation of rape. It's that the, both Dr. Dean, well, Dr. Dean in particular was relying on Cecilia Rodriguez's statement as to what happened that day and what happened to Mr. Lopez, what his demeanor was like upon drinking. He used that information to say that Mr. Lopez's demeanor while drinking was inconsistent with pathological intoxication, yet now we know that Cecilia Rodriguez's entire statement is not credible. And I think that Mr. Lopez is at this point, after a summary proceeding, entitled to at least a remand for an evidentiary hearing so that he can prove how that report would have changed the defense. Respectfully, it would not have diminished Dr. Bendheim's diagnosis. Well, neither of these doctors actually saw your client, correct? Dr. Bendheim did, Your Honor. Dr. Dean did not. Okay. And then this pathological intoxication, you know, I guess when you go to prejudice, everyone else that knew your client seems to indicate, well, yeah, he was mean when he was drunk and he was a different guy when he was sober. But the way they describe pathological intoxication seems to be more almost like that people, they only have to take one sip and they go almost into this fugue state and then they may not even know what they've done. And the people that in the record seem to say that your client's just a drunk and that he was a mean drunk, but they don't describe any behavior that appears to be consistent with the pathological intoxication. So I'm wondering, you know, what is there that, you know, to show that this would be prejudicial? How, you know, how do we fit this in? Well, it's prejudicial for exactly the reason you described earlier. Dr. Dean is the one who described pathological intoxication as being just a few sips and you would go into almost this fugue state. Dr. Bentheim didn't characterize it that way. But both of the doctors agreed that pathological intoxication is a mental disease which is different and more mitigating than choosing to drink. That if you have, you know, if we all know if we have five beers we're going to be drunk, but if we have one beer we should be okay. But for individuals with pathological intoxication, not every time, according to Dr. Bentheim, there could be serious effects. But Dr. Dean believed that every time you had a sip you had to have this psychotic reaction. And that's why he relied on Cecilia Rodriguez's unreliable report about Mr. Lopez to discredit the diagnosis of pathological intoxication. So if you take Cecilia Rodriguez out of the equation, Dr. Dean's report has zero credibility and the only evidence in the record would be Dr. Bentheim's diagnosis that Mr. Lopez suffered from pathological intoxication, which is incredibly prejudicial to not have that opportunity to present that mitigation because it would have rebutted the mens re for the aggravating circumstance in this case, and there's a single aggravating circumstance that does have a knowledge component to it. Well, going back to Dr. Dean, although he said at one point in his testimony that's what he was relying on, he had talked earlier about other factors that led him to the conclusion that this individual did not have or was not appropriately diagnosed as having pathological intoxication, and then on his redirect examination he came back to those other issues. So it's not really fair to say that the former girlfriend incident was the sole foundation of his report, is it? I believe it is fair to characterize it that way, looking at his testimony. But again, Your Honor, I would suggest that we should have a hearing about that. We haven't had an opportunity to actually hear it. Well, we can look at the testimony. So tell me, speaking of the hearing, then, why don't you tell us in practical terms what would the hearing look like? The hearing would be, obviously, the State would have an opportunity to rebut whether or not this evidence was actually withheld. At this point, there's a presumption that it was withheld. Correct. We would put on evidence of why it was withheld, why it wasn't in the trial file, but we got it in the police reports. We would presumably call Dr. Dean to testify about whether or not this would have changed his diagnosis or undermined his diagnosis, and we would have an opportunity to make arguments to the district court as to the prejudice. We could possibly, I don't know, call the judge, call the prosecutor. We haven't had the opportunity to conduct the discovery, so I don't know yet everything that we would present at that point, because we were cut off before discovery was allowed in the district court. We would not, however, be allowed to call Dr. Bentheim, tragically, because he is deceased, and he was actually suffering from dementia by the time this case came around, which is why his declaration is not in the record. But you've already indicated it wouldn't have changed the way his report is structured. It wouldn't have changed anything. It wouldn't have changed anything, because he also relied on the resisting arrest pre-sentence report, as well as the statements of Raymond Hernandez. And there is additional evidence in the record, Judge Callahan, with respect to Mr. Lopez's immediate change in demeanor upon consuming substance on the evening of the witnesses, Pauline Rodriguez and Yodiv Yesobori. You know, I guess there's... That was in the record, though. That's in the record, right? It was in the record. I just wanted to make sure that I wasn't conceding at some point, in case I misunderstood. You know, the other thing is, if you look at the DSM for pathological intoxication, they say it's maladaptive behavioral changes, aggressive or assaultive behavior occurring within minutes of ingesting an amount of alcohol insufficient to induce intoxication in most people. Do you think that is consistent with both Dr. Benheim and Dr. Dean? I think both Dr. Benheim and Dr. Dean relied on the DSM-3. Dr. Benheim and Dr. Dean disagreed as to whether that reaction had to occur every single time the person ingested alcohol. Dr. Benheim said it did not, that it could be variable. Right, but if you take the... Well, it wasn't a diagnosis. It was a hypothesis. I believe Dr. Benheim characterized his testimony. How does that fit even with this description and the facts at issue here, if you take this particular crime? I mean, it seems like he has a hypothesis out here, but it doesn't match the facts. That's why I keep having a, you know, I can see why the judge might have felt it didn't match the facts, and I'm having some trouble integrating the facts with the hypothesis, and maybe you could help me on that. Certainly, Your Honor. Dr. Benheim, I do believe, actually testified that he felt that the facts of the crime were consistent with the pathological intoxication reaction. The judge rejected Dr. Benheim's testimony in favor of Dr. Dean, so he ruled that Mr. Lopez had failed to prove that he suffered from this condition of pathological intoxication, and if you... I mean, the facts, the very tragic facts of the crime itself bespeak an individual who is completely disorganized and in a psychotic state of mind, and we don't have a confession, obviously, as to what happened. How they focused on him, he asked about the woman whose throat was slit, and apparently the police had not released that information purposely because they felt that that would be something only that the killer would know, and that he was being questioned on a completely unrelated crime, and then he asked, oh, did they catch anyone about the woman who got their throat slit, and isn't that what focused on him? We have vehemently rejected the idea that the people in the neighborhood did not know that Ms. Holmes' throat had been slit, and, in fact, have cited to the record where, in fact, individuals in the neighborhood did know and did talk to Mr. Lopez about her having her throat slit prior to Mr. Lopez being arrested, so... Well, but it's a dispute, is that's why the police focused on him, though. They weren't otherwise focusing on him, right? The police believed that they had kept that under wraps, but the facts are that they had not, so the facts... Okay, so that really goes to whether, well, I guess that's a little bit whether on the guilt phase more than on the sentencing part of it, because I'm sure that the prosecutors argued, well, how would he have known if he hadn't been the person that slit his throat, but then that started a cascade of events that put, you know, where they put the physical evidence consistent with the rape and tied that up to your client. Yes, ma'am, and I mean, we don't have a Jackson versus Virginia claim here, so that is how they tied him to the crime, but we have always denied that, and it actually was important to Dr. Dean, Judge McKeown, you were asking me about some other things that Dr. Dean had relied on, and one of them was that Mr. Lopez apparently had a memory of the crime because he knew about Ms. Holmes' throat being slit, and that would be inconsistent with not having a memory of the event, which pathological intoxicants typically don't have a memory, but you have to, again, accept that that wasn't common knowledge in the neighborhood, which is, we submit, contrary to what's in the record, from Cipriano Chavez and from Pauline Rodriguez. Your Honor, as my time is growing short, unless there's additional questions about the Brady claim, there are some points that I think are important to make, but I'm happy to talk more about the Brady claim. If not, I want to turn to the State's affirmative and express waiver of exhaustion in the district court, and I think it's important to have an understanding of the case management order in this case and how habeas cases were handled in the District of Arizona, at least back in the late 90s, and I moved in 2000, so I don't know how they've done it since, but in 97 through 2000, when I first started doing habeas work, the way things were handled in the District of Arizona was that after a petition was filed, the court would issue a case management order where he would direct the respondent to answer on the procedural status of the claims, and the court was very clear, and all the parties understood, that the courts in Arizona and that district wanted to know what claims they were going to be dealing with with procedural defenses and what cases they were going to be dealing with under a 2253B. Counsel, let me see if I can short-circuit this a little bit by pointing to what is of concern to me in your argument in this regard. To me, speaking only for myself, I think that the assertion that the State waived the opportunity to argue exhaustion seems very clear because they had reviewed the various allegations of ineffectiveness and conceded that the claim was properly exhausted. That's fine, but it doesn't get you very far, potentially, because there also has to have been development of the appropriate facts in State court. And what I don't see is, and that's a separate reason that has nothing to do with waiver or exhaustion, per se. It has to do with whether those facts were developed, and they weren't. So how do you get past that second hurdle? I guess the way that we would get past that second hurdle, Your Honor, would be to suggest that if the district court erred in his finding, then the appropriate step at this juncture is to send us back for a remand for us to establish the 2254E threshold as to why the judge should consider our additional facts. So you're not asking us on that claim to do anything more than determine whether the State waived the opportunity to rely on lack of exhaustion? Given the procedural posture of this case, Your Honor, and the fact that the judge reversed course without notice to the defense, that the appropriate step would – and so basically cut off any 2254E analysis, although I can explain to you how I believe we've established and met our burden under 2254E, and I don't want to give up that opportunity. But I do believe that it would be appropriate to send the case back to the district court for an initial determination on whether or not Mr. Lopez failed to develop whether he was diligent. And I would suggest to Your Honor that Mr. Lopez was diligent, that he did not fail to develop, because the reason that these facts were not developed in State court was not his fault, but rather the fault of the Arizona courts in denying Mr. Lopez an evidentiary hearing. And in that instance, we're on all fours with Michael Taylor in Williams v. Taylor from the U.S. Supreme Court case, where the claim itself wasn't even identified in Mr. Taylor's case in State court. It wasn't identified at all until he got into Federal court. But the U.S. Supreme Court said because he had requested an evidentiary hearing – and remember, he hadn't asked for an evidentiary hearing on his claim. He just asked for an evidentiary hearing, period. That was denied. And the U.S. Supreme Court said because he had been denied an evidentiary hearing, he was denied the opportunity for factual development. Arizona law required that Mr. Lopez's post-conviction counsel merely needed to a colorable claim in order to be entitled to an evidentiary hearing. What his post-convictional counsel said to the court was, I need an evidentiary hearing for a full development of the record. Now, that seems backwards. You don't get a hearing to show that you've been diligent. That can't be right. You have to do something to be diligent to entitle yourself to a hearing. The purpose of a hearing isn't so that otherwise that conflates what you – the requirements on you. So how do you show diligence in the record? We show diligence in the record by post-conviction counsel having filed a pleading alleging ineffective assistance of counsel, failure to properly prepare his expert, and attaching to that petition an affidavit from Dr. Bentheim, as well as other evidence, and then requesting a full evidentiary hearing. State court petitioners in Arizona, just like state court petitioners across this country, are not – if they get a hearing, are not bound by the four corners of their petition. No, but here's the biggest problem I have. And so, you know, we obviously have to go back and take another look. But I agree with Judge Graber. It appears that the sua sponte raising of the procedural default was improper. And then it brings me to Section E. And when I look at Williams v. Taylor, the question is whether the petitioners made a reasonable effort to – in light of what information is available to pursue a claim. Well, the information that I understand you're now suggesting should be kind of circled back relates to his background. That's one of the things, correct? That's one of the things, yes, Your Honor. His personal history. And what else? Well, his background, his personal history, all of which explains his neurocognitive deficits. Okay, but it's his background and his personal history. And his mental defects, yes. But the reality is that's what you're asking about. That information, what did he need a hearing about that for? I mean, the claim he made, it seems in the record, is that he didn't – the doctor didn't – the good doctor didn't get the benefit of Rodriguez and Sabori. But he never even made this claim about his background. And that's not something that is external to him. So that's where I'm having trouble. And maybe you can tell me, you know, how this connects up. And perhaps I misunderstand the difference about the State's waiver of exhaustion, because it seems to me that once the State waived exhaustion, and we were briefing this case on the merits, we were entitled in the district court to present all this evidence. But in addition, I think if you – Why would you be able to present something – I mean, that's the whole purpose of the multiple hearings through the State, is you can't just all of a sudden land in district court and then say, well, because they waived procedural default, I get to present everything here, even if I didn't present it in district court. I mean, is that your position? And if so, what would be the basis for that? No, I'm sorry. I misspoke. What – and let me just go back to what happened in post-conviction. In post-conviction, there was a petition and a request for an evidentiary hearing. If an evidentiary hearing had been granted, it is our position that at that point, funds would have been available for counsel to conduct additional investigation and to get additional expert reports, which were not available to him prior to the granting of a hearing. By denying the evidentiary hearing, factual development was therefore cut off. But what's the factual – I mean, in other words, did the lawyer say, I need more money – I mean, what do you need a hearing, an evidentiary hearing or a hearing for if your real purpose is to get – to seek state funds to get an additional witness or to put the – you can put the evidence in that you have from your own client, which is his background? I mean, that's what's missing is any effort to go that route as opposed to these two additional witnesses. Your Honor, what we suggest, and again, we'd want a hearing on the diligence in state court – I mean, in the Federal District Court, and to have an opportunity to brief us further. But what we suggest is that – But you're saying you're entitled to a hearing to show diligence, even though diligence is required to be entitled to a hearing. Your Honor, what I'm saying is – well, first, Shedd v. Ryan says that we're entitled to a hearing on diligence. But second, what I'm saying is that we did show diligence already in the district court and that we could show what additional evidence would have been presented in state court had he not been cut off by having a hearing. What we are alleging is that Mr. Lopez – that Mr. Lopez has appointed counsel in post-conviction, did what he was required to do under Arizona law to be entitled to a hearing, had – and that it would have been futile for him to ask for additional money and resources. And I would actually – I hate to disagree with you, Judge McKeon, but I don't think it's fair to characterize the additional evidence that we've presented to Dr. Woods as being merely personal history that was already available. Dr. Woods was able to explain why through his interview of Mr. Lopez. And he was able to, as a neuropsychiatrist, take these interviews of collateral witnesses – not self-serving statements from Mr. Lopez, but the collateral witnesses as to Mr. Lopez's family, their abject poverty, the amount of violence that he sustained, his night terrors, and explain why all of that meant that Mr. Lopez had brain damage, that he suffered from neurocognitive deficits, that he had post-traumatic stress disorder. All of those things that we contend, had we not been cut off in our factual development in state court, we would have been able to present to state court. But if the state court cuts off your factual development, we believe under Williams that means we didn't fail to develop and are entitled to present that evidence in Federal district court. So, under the premise that you advance, anytime you don't get a hearing in the state court, you then would be entitled to that in the Federal court. Not anytime, but under the circumstances. But virtually anytime, because you can find somebody to come in and say, well, we didn't present enough of this or enough of that. So, I mean, what is the kind of foundational premise that you would have us adopt here? I would have you adopt the premise that where Mr. Lopez's attorney complied with the Arizona rules and requesting an evidentiary hearing and explaining to the post-conviction court that he needed an evidentiary hearing in order to put all of the evidence and to make a complete record in the case, and that that was cut off by the prosecution, that he did enough, just as the petitioner in Williams did enough, to cross over the 2254E hurdle. The state decided that they didn't want any further factual development. They didn't want the opportunity to hear more facts in this case, and that was their choice. But that does not prohibit the Federal court from looking at this very serious constitutional claim, which I think if you look at all of our evidence, one thing that is perfectly clear and that the state has not, or the Respondent has not once denied, is that Mr. Lopez's sentencing hearing was an abject failure of justice. He was not sentenced based on a fair record. The judge didn't know who he was. His own lawyer said that he was devoid of anything societally redeeming, and it was based on an unreliable, or infected by the unreliable report of Ms. Rodriguez. Thank you, Counsel. You've used your time, but we'll probably give you a little bit of rebuttal when the time comes. We'll hear now from the Respondent. May it please the Court, Counsel, my name is Kent Catani. I'm an Assistant Attorney General from the State of Arizona representing Respondents in this matter. I'd like to start with the Brady issue and make two principal points. The first is simply that the information that's contained in the handwritten note is no different than what was presented to the Defendant in the police reports. The information is essentially the same. The second point is that this information, this evidence that a rape was committed, was introduced by Lopez, by Lopez's counsel. He initiated this whole discussion about whether this, about this crime, through the testimony of Dr. Bendheim. It was introduced to show evidence of pathological intoxication. I guess going to the first, the first point, this information is all included in the police reports. There's the information that... How is the information that the, the, the person who would be the alleged victim in the report that was not credible, how is that in the police report? That's a conclusion based on the facts that are, that are detailed in that, in that handwritten note where it says the, and the police report details that the victim had had consensual sex with Mr. Lopez previously, that although she said that she was afraid of him, she had gone with him voluntarily on the day of, of this rape. So there... Well, that by itself wouldn't mean that a rape didn't happen or that the person reporting it was not credible, because a person who has previously had consensual sex with someone can still be raped on a future occasion. So why, why wouldn't in the ordinary course, why wouldn't a defendant be entitled to a discovery of a note that comes to the conclusion on the part of the person who has spoken with or interviewed a complaining witness that they find that witness not credible? Isn't that mitigating evidence? Well, I think if we were talking about the, the crime that he's been convicted of, that that would have been something that would have been part of the file that he, he probably would have had. Although, again, this is just a note that's conclusion. Well, probably would have had isn't my question, whether he's entitled to have it and where the potentially, where, where the other crime comes into the case. Why wouldn't that, I mean, your, your assertion that he brought it up in, to me only makes it stronger that he should have had it because how to handle an allegation of rape that the police conclude is incredible when you're preparing your witnesses seems to me quite different in the kind of strategic choices you might make if you're convinced that your client did rape somebody. That just seems incredibly important to a defendant to have that kind of information. Well, I guess preliminarily, I don't think this handwritten note says the victim is not credible. It says her credibility could be impeached. And it's simply the note, this is the reason the case is not going forward. Not that we don't think this rape occurred. This is simply the, the reason the case is not being prosecuted. If I could go back, the chronology is important here. I want, I'm not, I'm not sure I yet am with you on that. Is it your assertion that because the note says the person's credibility can be impeached and therefore we aren't prosecuting, that that is not Brady material because it isn't forcefully enough rejecting the potential complaining party's presentation? I don't understand what you're, what you're saying. Well, what I'm, what I'm getting at is the, the information, the reason the victim's credibility could be impeached is the, the information that needs to be provided. And, and that's provided. Now you just have a conclusion based on, on these factors that have all been detailed. So if I follow that logic, then even if it's the crime with which the person is being charged, you would say it's only our conclusions. You're not entitled to this material. I think that would be work product. I don't think that would be something that would be disclosable or would be required. That's a different question. My question is whether it is actually, given the nature of it, and maybe we don't know that because there hasn't been a hearing, but is, would a prosecutor's internal notes and analysis normally be Brady material? No, I, I do not think they would be. Can we tell from, without further factual development, whether this note is work product that would not be disclosable or whether it is instead something that the police themselves were thinking about? I don't know the, I don't know who the author, it's not clear from the record who the author is of the note. I guess I would go back to the, the chronology. Again, it's important to look at what happened at the first trial. This information, this rape was not used in any way in the first trial. It's, it's not argued in aggravation. It's not brought up in mitigation or in rebuttal to mitigation. The trial court doesn't cite it in any way. The only reference to it is in the Arizona Supreme Court's opinion saying that he was arrested in an unrelated matter. So it's clear that it's not at all part of this first trial. So now the, the, the sentence is reversed. We go back for a resentencing. Defense counsel interviews, has a videotaped deposition of Dr. Bentheim and in an attempt, Dr. Bentheim did not testify at the first sentencing because his, his diagnosis was there's no significant mental health issue. They chose not to use him. They, they decide to call him at the second sentencing to develop this diagnosis of and defense counsel views it as being helpful as does Dr. Bentheim. The fact that he's committed this violent rape four days afterwards when he's consumed alcohol, when he had previously had consensual sex, when presumably he was sober. So they proffer it to Dr. Bentheim as this is something that happened. He raped and he raped this woman, this other woman four days later when he consumed some amount of alcohol. Does that support your, your diagnosis now of pathological intoxication? And Dr. Bentheim says, yes, absolutely. So it, it's the, it's the defendant who's introducing the evidence. The state didn't have any real reason to go into the, the police file in this arrest in an unrelated matter. It was not used as in any way during the guilt phase nor in sentencing. I could say in this, in this first trial, the defendant chooses to use it and offer it as true during his second sentencing. So then the, the State's expert is asked, and it's, it's the questioning from, from defense counsel who goes into this, look, he had this loving relationship with her previously, but then he, he commits this violent rape when he's intoxicated. So this is all stuff that, this is all information that defense counsel is eliciting and proffering as true. So at, at that point, given the fact that this is his theory of the case, this is the defendant's own theory, I rape people when I consume a small amount of, of alcohol. It was entirely fair game for the prosecutors. It's, it's one small paragraph, not as part of the aggravation discussion at sentencing, but in response to the defense's mitigation case, which was this pathological intoxication causes him to do this. And the prosecutor just in this one small paragraph references, references the rape and says, this is not mitigating. This is, there's nothing mitigating about raping women. So that's why I don't think it's necessary for any further development of this information. It would be nice to know where the note came from, but at the end of the day, it's not really important. It was the defendant who offered it as true. So, but you're, but are you arguing that it's not Brady material anyway, because it would be someone, either a police officer or a prosecutor that looked at the case and said, hey, I don't think it's a very strong case. And so it's not going forward. I'm also suggesting that it's not Brady material because the facts under, that are set forth in that handwritten note were available, were made available. The police reports were given to the defendant. And keep in mind that we're now talking about four years later, where we're having a sentencing and it's obvious that he hasn't been charged. And the only thing this, this handwritten note really says is the reason. You wouldn't necessarily know why though, why he hadn't been charged, right? I mean, without some explanation, there could be many possible explanations for not charging him at that point. They're, they're arguing you don't charge someone with, you know, disturbing the peace when they've been convicted of a special circumstance murder and have the death penalty. That's what, that's what they're saying. That could be another reason. Well, and I, and I don't think that the prosecution's reasons for deciding not to, not to prosecute are, is implicated by Brady. There, as long as the, all of the information is made available, if the state chooses not to prosecute for whatever reason, and particularly where it's, it's obvious that the state has chosen not to go forward. And, and in this case, it is a serious crime. And, and it, and this was someone who the victim knew and knew that he'd had consensual sex with previously. So this, this wasn't a, there, there's nothing that's really a great mystery in, in that handwritten note that talks about the victim could be impeached by this. Not that this victim, we don't believe this victim, she's lying. It's simply the reasons for a turndown. And it's not that this crime did not occur. Not that this victim is lying or is not credible. It's simply, she could be impeached with this information. And I, I think that's, that should have been obvious to, to defense counsel at the time, to the extent they wanted to make an issue of it. And I guess it's also important to keep in mind that if defense counsel had wanted to, to make this an issue, they had, they had every incentive to, to stand up and say, this crime that was referenced in the pre-sentence report, that did not happen. They didn't do it at the first sentencing, the first trial and sentencing. They don't do it at the second. And then we move to post-conviction. They file a petition for post-conviction relief and don't say anything about the, the court relied on this rape that did not occur. And so if, if that's the position that this did not occur, they, they had every incentive to bring that up as a post-conviction claim. And, and that was not done. Well, I think, as I understand, part of the claim is that, you know, if you know what the facts are, that's the foundation for how you shape your case. So instead of like serving this up to Dr. Dean, and so that they could have changed the whole landscape of his cross-examination, for example. So I think to me, that's the, the real complaint is that they, they're operating with one hand behind their back because they don't know about this document. But they, they serve this up. Before Dr. Dean's testimony, we have Dr. Bentheim's. And they're the ones who introduce it saying, we want you to consider the fact that he violently raped someone. Why do that if your position is that rape never occurred? So it's, it's somewhat disingenuous to argue on the one hand that this is the basis for a pathological intoxication defense. And even when we get to post-conviction, my claim is that my attorney was ineffective for not doing a better job of getting this information to Dr. Bentheim earlier. Not that getting false information. If Dr. Bentheim had had this information previously, his diagnosis would have been, would have been stronger. So that, that's where we are in post-conviction. So I go back to, is this Brady material? It wouldn't cross my mind to, to have disclosed, to have looked for this information or disclosed it prior to trial or sentencing. And if the defendant raises it as this unrelated crime, as I committed this crime and this is a basis for my defendant's or for my expert's opinion, I guess it's a, I'm not seeing how that implicates any duty under Brady. And it wouldn't occur to me that, to go in and try to discount, oh, this rape really didn't occur. He's the one who's proffering it. He's the one with the most knowledge of it. I want to ask you some things about the exhaustion set of things. And I'd like you to assume for the sake of my question that the State waived this by saying that the claim was exhausted. There's a difference between exhaustion and proof. So I guess if there's no exhaustion argument here, the question then would become under subsection E, whether there was diligence in developing the facts that were not developed in State court. And I guess I have two questions. The first is, the defense seems to suggest that one option, if we disagree with the District Court's reaching this conclusion of no exhaustion is wrong, that we ought to just say that and do no more and send it back to the District Court to look at the next set of legal issues in the first instance. And the other is more proactively to say, well, there was diligence or there ought to be a hearing on diligence and go one step further. If we disagree with what the Court did on exhaustion, what do you think we should do next? Well, I think you look to see. I think if assuming the claim is exhausted, that doesn't give you carte blanche to introduce all kinds of new evidence now in Federal court. And you do have to look to diligence. And I think in this case, the key documents, there are several points. First, the petition for review. We're looking at the post-conviction proceeding, both the petition, the reply, and then the petition for review to the Arizona Supreme Court. And there's nothing in that petition for review that suggests that Lopez is raising anything other than my counsel did not give Dr. Benheim these four bits of information. There's nothing that suggests that he should have done anything beyond that. And the reply makes the same point. When the State responded to the petition for post-conviction relief, the State specifically noted he's not really saying that he should have raised any new information. He's just saying that he should have done a better job of getting information to the expert. And his reply is in the excerpts of record. It's the defendant's experts at 342 that says the focus of the petitioner's argument is that counsel failed to give Dr. Benheim all the information at one time to get his best and most certain opinion. The impact of the testimony has been weakened by the fact that it has come before the Court in bits and pieces. So they're saying this information did, in fact, we're not talking about information that wasn't available to the Court. The complaint is that it came in in bits and pieces. But apart from the witness' testimony, what counsel said this morning is they had also asked for an evidentiary hearing. And since that was not granted, there wasn't really a foundation to provide money for an expert who could actually put a constellation together of this evidence that would include not just perhaps those witnesses, but his family background. What is your view on that? I'm not aware of anything in the record that suggests that there was a denial of a funding request. The reason you don't get an evidentiary hearing is because we look at the affidavit that's submitted. The document that's submitted is this affidavit from Dr. Benheim that says if I'd been given this information, my diagnosis would have been stronger. The Court looks at that and says that would not have made a difference to me. This is the same judge who'd imposed sentence. He's looking at that and saying that this would not have mattered. I think it's also significant that the post-conviction counsel requested leave to file an amended petition so he could raise a claim relating to, it seems like he raised a claim, I'm thinking he asked for, he may have asked for funds for DNA testing and the Court said that it would grant that. He filed an amended petition which was several months later. The amended petition doesn't have anything about I need, there's a claim about mitigation relating to his childhood or his family that was not developed. The amended petition just relates to a juror who served who should have been, an attorney should have tried to remove the judge for cause. Well, you can get money without a hearing, can't you? Certainly. And that's why there's no suggestion here. There's nothing in the record that suggests that there was a denial of funds for investigation and most of this information was information that was available to him without money. If we're talking about his childhood and background, there's no suggestion that that money. So I don't think there's any showing of diligence whatsoever. There's, and again, I think it's important to look at the petition for review. I take that as an implicit answer to my question that we should analyze diligence ourselves and not give the district court an opportunity first to analyze diligence, including to decide whether a hearing is appropriate on that subject. Well, I think we can look at the state court record and determine a lack of diligence without sending it back for any type of hearing. You have to present your claim to the state's highest court. There has to be a request. If there's a request for funding that's denied, you have a better argument that you've been diligent. There's nothing like that here. And before, I don't want to concede that there has been a waiver. What was the request for evidentiary hearing? It was a request to have, apparently, to have Dr. Bentheim present testimony. And that's the affidavit that's submitted that's saying, if we get a hearing, this is what Dr. Bentheim will say. And the trial judge looks at that and says … And that's what the judge said, but it wouldn't change calculus. It wouldn't change my decision. So unless you proper something else, there's no reason an evidentiary hearing would be a waste of judicial resources. The judge is perfectly capable of looking at that, at what the expert is saying in the affidavit and saying there's nothing there that would change what happened. With regard to the waiver, this was a – the context is briefing on the procedural status. And the State certainly should have said it's exhausted to the extent he's raising the same claim that he raised in State court. The State did not do that. But the – before the district court proceedings had concluded, that became abundantly clear. In fact, within months of filing that answer, when the defendant asked to do – for a contact visit for – I believe it was for a neurologist. Yes. But those contact visits, I thought that the reason why there was an objection had to do with safety concerns and not with failure to exhaust. I mean, it seems like years of development of these new facts occurred or new theories and so forth without the State finally saying, oops, there's not a factual basis developed and, you know … My recollection of the State's answer was that it goes beyond what was raised in State court. There's a – it's in response to the request for a contact visit. I don't have that right here in front of me. But I think there's no prejudice – if we're talking about prejudice to the defendant, he's just had an opportunity to develop more information. And as Day v. McDonough points out, that there would be – the district court is perfectly entitled to, on its own, realize there's a problem. And Day v. McDonough was a statute of limitations issue. The court realizes that the State has made a miscalculation. What do you do with Franklin v. Johnson? And I believe that's the correct case. I'm thinking I could be mistaken on the case name. But we definitely have a case holding that where the State has not raised the waiver issue – I mean, the exhaustion issue that it is waived. But I understood that if it's not raised in the district court. Here it was raised in the district court before the proceedings were final. And that's in the – is it Granberry? The note is that we don't want the parties to go through – and when the main event has ended, then to make a different argument later. The main event has not ended here. The district court proceedings are still ongoing. And in Day v. McDonough, it notes that it would be perfectly appropriate for the judge, upon realizing in that instance a statute of limitations miscalculation, to ask the parties for supplemental briefing. And that's essentially what occurred here. The parties – in looking at the merits briefing that Lopez counsel filed, it was very apparent to the State that this goes well beyond what was raised in state court. So we've essentially had an amendment to the initial pleadings that the State filed. And I think under Day v. McDonough and Granberry v. Greer that it was entirely appropriate for the district court to do what he did. The final point I'd like to make is just in terms of any kind of an argument regarding guilt. In the post-conviction proceeding, Lopez counsel filed as Claim 5, a claim that there's newly discovered evidence of DNA, presumably DNA testing that could be done that was not available at the time of trial. The court agreed. The State did not object. And the court orders that he provide a DNA sample if the evidence is available. State DPS goes in and gets a DNA sample from him, and his counsel immediately comes in and objects and says, no, we're withdrawing that claim, and my client understands that this will result in preclusion of this issue in the future. So any suggestion that there's a concern about guilt, I think, is – should – is a little bit of a deference to the fact that the defendant is not making a factual innocence claim. Right. Just the briefing does continue to posit these – these assertions. No, but the issue here is sentencing. As I understand it, it's death penalty or no death penalty, and that's really our only issue. And at least as I understand the issue, it presumes guilt as convicted, but that doesn't really answer the question whether counsel at the original trial or the second sentencing proceeding was effective or ineffective in arguing to spare his life. Right. And what we're here to address, though, is the reasonableness of the State court decision on post-conviction, when he has this opportunity to raise ineffective assistance. And this wasn't just the – he'd had – it's not a post-conviction proceeding, but he got a second sentencing. He had another lawyer who came in and got to look at the record in the first case and conducted the second sentencing. We had the post-conviction proceeding, and that's what we're here to address, the – whether that ruling was consistent with United States Supreme Court authority. And given – given the pleadings that were filed, the absence of any request for further investigation, any kind of denial of funds, Lopez has not demonstrated diligence that would allow this Court to go beyond what was presented to the State post-conviction court. And the same judge who imposed sentence looked at that information that was presented in post-conviction and said, this would not have changed my mind. So I don't think Lopez is entitled to – has established a basis for relief. Thank you. Thank you, counsel. Ms. Henry, you used up your time, but you may have two minutes for rebuttal. Thank you, Your Honor. Respectfully, the respondent has failed to address how Cohn v. Bell governs the Brady claim in this case. And we submit that Cohn v. Bell is controlling and that the prosecuting attorney in this case affirmatively argued the truth of this alleged rape allegation, which has now been discredited and which he knew at the time was incredible and had failed to disclose that to the State. He argued it. He used it. The note specifically said reason for turn down, no reasonable probability of conviction, witness is not credible. And then it talks about, most importantly for our purposes, that the medical reports refuted her story that she had been choked by the defendant. And respectfully, Your Honor, there is not a defense counsel in their right mind that thinks it's helpful to have an allegation of rape also besides a rape murder for their client. Mr. Lopez's attorney did not introduce the rape on the allegation of rape on in the first instance. It's at ER 296. The allegation was in the pre-sentence report in 1987 that the judge had read. It was out there. You cannot unring that bell. You cannot undo the landscape of this case, which had been developed, which is that Mr. Lopez, according to the prosecutor and according to the pre-sentence report writer, had committed a rape murder and then went on to rape another. But don't we have to, on some level, I mean, the judge never relied on that. The judge, I mean, the first time, the judge relied on the resisting arrest. And then the judge was told that that was wrong. And then the next time, and all throughout this, I mean, the elephant in the room are the horrendous facts of this crime, which I understand why you don't want to talk about them. But the court was very focused on, I mean, this was not, I mean, the facts are very brutal. And that seems to be the court, you know, so how, you know, how from what the judge said can we say that the judge was relying on a case that wasn't charged? Because the judge said he considered the arguments of counsel, the pre-sentence report. He said he considered it. He said he considered the evidence. He said he considered Dr. Dean. He said he considered Dr. Bentheim's testimony. But see, I understood. But then how, if this rape really didn't happen, wouldn't that pull a thread out of your theory of the intoxication theory? No, Your Honor, we respectfully don't believe that it would have had any impact whatsoever on Dr. Bentheim's diagnosis. In fact, Dr. Bentheim would have been more credible. And again, what we have here is exactly what we had, a brutal crime in Cone v. Bell, two elderly people who were beaten to death. That didn't stop the U.S. Supreme Court from reversing with an error exactly the same as here. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted. And thank both counsel for their excellent arguments and good preparation. I also want to be sure and welcome the students who are here to observe today. We will go, we will adjourn and go confer. And then in a few minutes, we'll return and talk with the students and anyone else who wants to stay. And as I'm sure you've already been informed, we're happy to talk about anything except this case or other cases pending before the Court or specific issues that we may be called upon to decide. But with that limitation, we'll be delighted to meet with you afterwards. So with that, we are adjourned. Thank you. Thank you.
judges: Graber, McKeown, Callahan